IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>VIRGINIA MARIE JACK,<br><br>        DEBTORS.<br><br>TOGETHER CREDIT UNION,<br><br>        MOVANT,<br>V.<br><br>VIRGINIA MARIE JACK, DEBTOR,<br>JORDAN E. LUBIN, TRUSTEE<br><br>        RESPONDENTS. | CASE NO. 21-53732-JWC<br><br>CHAPTER: 7<br><br>JUDGE: JUDGE JEFFERY W. CAVENDER<br><br>CONTESTED MATTER |

## MOTION TO MODIFY AUTOMATIC STAY AS TO DEBTOR AND WAIVER OF THE 30-DAY REQUIREMENT OF 11 U.S.C. § 362(d)

**COMES NOW** Together Credit Union, ("Movant" hereinafter), a secured creditor and/or party in interest in the above-captioned matter, and respectfully shows the Court as follows:

1. This Motion is made pursuant to § 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed under applicable law and the contract between the parties, including, but not limited to, the right to initiate a replevin action to seek possession of on certain Collateral pursuant to the underlying loan documents and applicable state law.

2. The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on May 12, 2021.

3. The Bankruptcy Code has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362.

4. Jordan E. Lubin is the duly designated Chapter 7 Trustee.

5. Movant is the holder of a loan secured by certain real Collateral in which Virginia Marie Jack (herein "Debtor") has an interest, in personal Collateral referred as 2016 Jeep Renegade VIN# ZACCJBDT4GPD80961, (collectively the "Collateral"), by virtue of a Loan Agreement and Consumer Credit Disclosure Statement (the "Contract") executed by Debtor, a copy of which is attached hereto as **Exhibit A**. Debtor is owner of the Collateral and liable on the Contract.

6. The Debtor's Statement of Intention states the Debtor proposes to retain and reaffirm the Collateral/Collateral. As of July 8, 2021, Debtor is in default to Movant in the amount of $1,016.55, representing the May 12, 2018 through July 12, 2021 with monthly payments in the amount of $338.85 per month. Therefore, Movant is not receiving payments on the account and the Collateral is depreciating in value. The stay should be terminated for cause, including the lack of adequate

protection of an interest in the Collateral of Movant, pursuant to 11 U.S.C § 362(d)(1).

7. As of July 8, 2021, the total unpaid principal balance is $13,129.80 and the loan balance is $13,279.93

8. Movant, by and through undersigned counsel, waives the requirement of 11 U.S.C. §362(d) and agrees that, if a hearing cannot be held within thirty (30) days from the filing of this Motion, said hearing shall be set on the next available date.

9. Because of the default and clear inability of Debtor's to make all required monthly payments, Movant is not adequately protected. Movant's interest in the Collateral would be irreparably harmed by the continuation of the automatic stays under §362.

10. Because the loan documents so provide, Movant is entitled to reasonable attorney's fees and costs of $1,138.00 incurred in bringing this motion.

11. Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived and that in the event the automatic stay is terminated as to the Collateral by order of the court and the case subsequently converts to another bankruptcy chapter, that the stay relief order remains in effect.

12. Movant is without sufficient information to form a belief whether there are additional liens on the Collateral or to determine the amount of any encumbrances that may consume any available equity in the Collateral. Debtor's Schedules indicate that there are no additional liens on the Collateral. Movant's loan balance, along with costs of sale render little or no equity in the Collateral to benefit the estate.

13. Should stay relief be granted as to the Collateral, Movant, pursuant to terms of the Contract, may foreclose its security interest and seek possession of the Collateral.

15. Movant requests that if the stay is modified that Movant be permitted to contact Debtor(s) and/or Debtor(s)' counsel, as appropriate, through its agents, servicers and representatives for the purpose to enter into discussion and consideration of loss mitigation options, as relating to the loan documents. Movant asserts that Debtor(s) and their counsel are responsible for filing any court documents required for approval of any such agreement that may arise from such discussions.

16. Pursuant to applicable local rules and O.C.G.A. § 44-14-162.2, the entity who has full authority to negotiate, amend or modify the terms of the aforementioned indebtedness is: Together Credit Union, Attn: Bankruptcy, 423 Lynch St., St. Louis, MO 63118

**WHEREFORE**, Movant moves this Court for an Order, after Notice and Hearing, terminating the automatic stay as to Movant and the Collateral so that Movant (and any successors or assigns) may take any and all steps under non-bankruptcy law necessary to exercise any and all rights it may have under the law and its loan documents; to enforce its remedies to foreclose upon and obtain possession of the Collateral; waiving the right to a hearing within thirty (30) days as provided by 11 U.S.C. § 362(e); that awards Movant its reasonable fees

and costs for this Motion; that pursuant to 11 U.S.C. § 362 directs Trustee to abandon the Collateral; waiving the provisions of Fed. R. Bankr. P. 4001(a)(3), and for such other and further relief as the Court deems just and appropriate.

      **RESPECTFULLY SUBMITTED** this the 26th of July, 2021.

      */s/ Julian Cotton*
      JULIAN COTTON, ESQ.
      Georgia Bar # 823134
      PADGETT LAW GROUP
      6267 Old Water Oak Road, Suite 203
      Tallahassee, FL 32312
      (850) 422-2520 (telephone)
      (850) 422-2567 (facsimile)
      Julian.Cotton@padgettlawgroup.com
      *Attorney for Together Credit Union*

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>VIRGINIA MARIE JACK,<br><br>    DEBTORS.<br>────────────────<br>TOGETHER CREDIT UNION,<br><br>    MOVANT,<br>V.<br><br>VIRGINIA MARIE JACK, DEBTOR,<br>JORDAN E. LUBIN, TRUSTEE<br><br>    RESPONDENTS. | CASE NO. 21-53732-JWC<br><br>CHAPTER: 7<br><br>JUDGE: JUDGE JEFFERY W. CAVENDER<br><br>CONTESTED MATTER |

CERTIFICATE OF SERVICE

    I, the undersigned, an attorney with Padgett Law Group, certify that I am, and at all times hereinafter mentioned was more than 18 years of age; and

    That on the <u>26th</u> day of July, 2021, I served a copy of the within *Notice of Hearing* and *Motion to Modify Automatic Stay as to Debtors and Waiver of the 30-Day Requirement of 11 U.S.C. § 362(e),* filed herein, by first class U.S. Mail with adequate prepaid postage, or electronically via e-mail, to said respondents in this bankruptcy matter as follows:

**By U.S. First Class Mail**

*Debtor*
Virginia Marie Jack
290 MLK Jr Drive SE, Apt 3030
Atlanta, GA 30312

**By Electronic Service**

*Attorney*
Charles M. Clapp
Law Offices of Charles Clapp, LLC
5 Concourse Parkway NE
Suite 3000
Atlanta, GA 30328

*Trustee*
Jordan E. Lubin
Lubin Law, P.C.
Building 2
8325 Dunwoody Place
Atlanta, GA 30350-3307

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed On: 07/26/2021    */s/ Julian Cotton*
JULIAN COTTON, ESQ.
Georgia Bar # 823134

**Anheuser-Busch**
**Employees' Credit Union**
*And Its Divisions*
1001 Lynch Street
St. Louis, MO 63118-1803
(314) 771-7700

# Loan Agreement And Consumer Credit Disclosure Statement ("Agreement")

**Borrower(s)**
Virginia Miller
1420 St Theresa Ln
St Charles, MO 63304

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | AMOUNT FINANCED The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS The amount You will have paid when You have made all scheduled payments. | Date 1/4/2018 |
|---|---|---|---|---|
| 4.00% | $2,755.75 | $21,641.28 | $24,397.03 | |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | $338.85 | Payments are due monthly beginning 2/12/2018 |
| 1 | $338.68 | Final payment due on 1/12/2024 |

☐ **Variable Rate.** Your loan is subject to a Variable Rate which is based on the current dividend rate being paid on the Shares or Certificates of Deposit securing Your loan ("Index") plus ___2%___ ("Margin"). The Index plus the Margin equals the Interest Rate. Changes in the Index will cause changes in the Interest Rate on the date that any such change in the Index occurs. Increases or decreases in the Interest Rate will cause like increases or decreases in the Finance Charge and will affect the number of Your scheduled payments. For example, if Your loan were for $10,000 at 9.00% for 60 months and the Interest Rate increased to 12.00% after 12 months, You would be required to make 1.54 additional payments.

☐ **Required Deposit:** The Annual Percentage Rate does not reflect Your required deposit.   **Filing Fee** ___0.00___   **Non-Filing Insurance** ___0.00___

**Property Insurance:** You may obtain property insurance from anyone You want that is acceptable to the Credit Union.

**Security:** You are giving a security interest in:
☒ Personal property (other than household goods or any dwelling) securing other loans with Us.
☒ The goods or property being purchased.
☒ Your present and future shares or deposits in the Credit Union
☐ Other_____

**Late Charge:** For payments due in excess of $25.00, if Your payment is more than 15 days late, You will be charged the greater of 5.00% of the payment due or $15.00, subject to a maximum in any event of $50.00. For payments due that are $25.00 or less, You will be charged $5.00 if Your payment is more than 15 days late.

**Prepayment:** If You pay off early, You will not have to pay a penalty.

See Your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

☒ This is a fixed-rate loan with a Simple Interest Rate of ___4.00___%.   ☐ This is a variable-rate loan with a present Variable Rate of _____.

| Itemization of Amount Financed of: ___$21,641.28___ | Amount Paid to Others on Your Behalf: $21,641.28 |
|---|---|
| Amount given to You directly ___$0.00___ | See Itemization of Amount Financed |
| Amount paid on Your account _____ | |

**Security Interest.** To secure all obligations of Borrower(s) hereunder to the Credit Union, You give a security interest and lien in and upon the following property, including any and all accessions, related insurance proceeds or insurance premium refunds.

| Year | Make | Model | V.I.N./Serial Number | Key/Lic. Number |
|---|---|---|---|---|
| 2016 | JEEP | Renegade | ZACCJBDT4GPD80961 | |

Other

1. **PROMISE TO PAY.** You promise to pay the amount borrowed, plus interest, other permitted charges and fees to the order of Anheuser-Busch Employees' Credit Union And Its Divisions operated by Anheuser-Busch Employees' Credit Union (Lender) or order, according to the terms of this Agreement (including those set forth in the Federal Truth-in-Lending Disclosure). Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒. In this Agreement, the use of the words "Credit Union," "We," "Us" and "Our" mean Anheuser-Busch Employees' Credit Union And Its Divisions operated by Anheuser-Busch Employees' Credit Union. The Borrower(s) and any Co-Signer(s) of the Agreement, individually and collectively, are sometimes referred to as "You" or "Your." (e) means an estimate, (n/a) means not applicable.

2. **LIABILITY OF PARTIES.** Each person who signs this Agreement as a Borrower or Co-Signer agrees to be individually and jointly obligated to pay Your loan in accordance with the terms and conditions of this Agreement. Any person who signs this Agreement and checks the box preceding "Owner of Collateral (other than Borrower)" does so voluntarily and solely to give a security interest in the Collateral shown in the Security Interest section on the reverse side, but is not personally liable for any indebtedness created by this Agreement.

3. **INTEREST.** Interest will be charged on the unpaid balance of Your loan at the Simple Interest Rate (or at a rate computed according to the Variable Rate provisions) designated in this Agreement until Your balance is paid in full. Any payment may be made early without penalty, and any early payments will have the result of reducing the total amount of interest paid. Any payment made after the due date will have the result of increasing the total amount of interest paid.

Borrower's Initials ___VM___  _____

## ADDITIONAL PROVISIONS OF LOAN AGREEMENT

4. **PAYMENTS.** Your payments are to be made according to the Payment Schedule (adjustable to correlate to interest rate changes as computed according to the Variable Rate provisions) in this Agreement. Any partial prepayment of Your loan will not delay Your next scheduled payment. If, when You pay Your last scheduled payment, the amount You pay exceeds Your loan balance, then You give the Credit Union permission to deposit the excess to Your savings account.

5. **COLLATERAL.** The Credit Union has been granted a security interest or lien in or upon the Collateral designated in this Agreement or in a separate document such as a Security Agreement, Assignment, Pledge or similar document (the subject matter of such a security interest or lien is referred to as "Collateral" in this Agreement). Except for the Credit Union's security interest or lien, the Collateral is owned free and clear from any adverse claim, security interest or encumbrance other than as now disclosed to the Credit Union. Without the express written consent of the Credit Union, no other liens, security interests or encumbrances will be allowed to attach to the Collateral. You agree to inform the Credit Union immediately if the Collateral is to be moved for an extended period from Your address shown in this Agreement or at such other address at which You have informed the Credit Union the Collateral is now located. The Collateral shall not be sold or ownership otherwise transferred and at all times the Collateral shall be kept in good repair. The Collateral shall not be used for any unlawful purpose. The Credit Union shall receive the full cooperation of the Borrower, Co-Signer or Owner in obtaining everything that We require to place and/or maintain Our security interest in and/or lien on the Collateral. The Credit Union may examine and inspect the Collateral at any time wherever located. All taxes or assessments on the Collateral shall be paid as they come due, and if not paid, the Credit Union may pay them and shall be entitled to reimbursement or, alternatively, to add any amount so paid to the unpaid balance of Your loan subject to the applicable interest rate.

   Collateral (other than household goods or any dwelling) given as security under this Agreement or for any other loan You may have with Us will secure all amounts You owe Us now and in the future if that status is reflected in the "Truth-in-Lending Disclosure" in any particular Agreement evidencing such debt.

6. **LIEN ON SHARES.** If shares or deposits are pledged as Collateral for this loan, You understand that the balance in Your account(s) on deposit with the Credit Union must be kept at least equal to the balance of Your loan until Your loan is repaid in full. We may, however, permit You to maintain or reduce Your account balances below Your loan balance. If You are in default, the Credit Union may apply all shares (except Keogh accounts and IRA accounts) then on deposit to Your loan up to an amount sufficient to repay Your loan.

7. **PROPERTY INSURANCE.** You promise to maintain property insurance in an amount necessary to protect Our security interest in the Collateral, with Us named as loss payee for Our protection. Such insurance shall specify a deductible not in excess of $1,000 and protect against loss by fire, theft and collision and will provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto, if any. You may provide the required property insurance through an existing policy or by a policy You independently obtain and pay for from a person of Your own choosing, providing such person is reasonably acceptable to Us. You agree to deliver satisfactory evidence of the insurance policy to Us within any time period specified in any notice from Us or on Our behalf. If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs to Your loan and You agree to pay for it by such means as increasing Your payment or increasing Your loan term. We are under no obligation to obtain insurance on Your behalf. If We do obtain insurance, the cost of obtaining that insurance may be added to Your loan balance, subject to the applicable interest rate. We have the authority to obtain, adjust, settle or cancel insurance and may endorse any party's name on any draft.

   Unless You provide evidence of the insurance coverage required by Your agreement with Us, We may purchase insurance at Your expense to protect Our interests in Your collateral. This insurance may, but need not, protect Your interests. The coverage that We purchase may not pay any claim that You make or any claim that is made against You in connection with the collateral. You may later cancel any insurance purchased by Us, but only after providing evidence that You have obtained insurance as required by Our agreement. If We purchase insurance for the collateral, You will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges We may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance You may be able to obtain on Your own.

8. **DEFAULT.** Your loan shall be in default if any of the following things occur: (a) You do not make any payment or perform any obligation under this Agreement or any other agreement that You may have with the Credit Union; or (b) You have made a false or misleading statement in Your credit application and/or in Your representations to the Credit Union while You owe money on this loan; or (c) You should die, or be involved in any insolvency, receivership or custodial proceeding brought by or against You; or (d) a judgment or tax lien should be filed against You or any attachment or garnishment should be issued against any of Your property or rights, specifically including anyone starting an action or proceeding to seize any of Your funds on deposit with the Credit Union; and/or (e) the Credit Union should, in good faith, believe Your ability to repay Your indebtedness hereunder is or soon will be impaired, time being of the very essence.

   Upon any occurrence of default, and to the extent permitted by law, We may declare the entire balance of Your loan immediately due and payable, without prior notice or demand. If the entire balance is not then paid immediately upon default, and if permitted by law, the Collateral shall be voluntarily surrendered to the Credit Union at a time and place acceptable to it. If this is not done, to the extent permitted by law, the Credit Union may enter the premises where the Collateral is located and take possession of it and the Credit Union may assert the defense of a superior right of possession as the holder of a security interest to any offense of alleged wrongful taking and conversion. The Credit Union may sell or dispose of the Collateral in any manner permitted by law, and any resulting deficiency on Your loan shall be immediately paid to the Credit Union. In the event collection efforts are required to obtain payment on this account, You agree, to the extent permitted by law, to pay all court costs, private process server fees, investigation fees or other costs incurred in the course of collecting any amounts owed under this Agreement or in the recovery of any Collateral. In the event Your Account is referred for collection to an attorney (who is not Our salaried employee) and suit is brought, You will also be required to pay attorneys' fees not to exceed 15% of the amount due and payable under this Agreement, together with any court costs assessed. As permitted by law, the Credit Union shall have the right to impress and enforce a statutory lien upon the shares and dividends of any member indebted to it, and We may enforce Our right to do so without further notice to You. Additionally, You agree that We may set-off any mutual indebtedness.

9. **ASSUMABILITY.** Your loan is not assumable.

10. **DELAY IN ENFORCEMENT.** We do not lose Our rights under this or any related agreement if We delay enforcing them. We can accept late payments, partial payments, or any other payments, even if they are marked "paid in full" without losing any of Our rights under this Agreement. If any provision of this or any related agreement is determined to be unenforceable or invalid, all other provisions remain in full force and effect.

11. **GOVERNING LAW.** You understand and agree that this Agreement will be governed by the laws of the State of Missouri except to the extent that federal law controls.

12. **INDEX.** If this is a variable rate loan, the index referred to in this Agreement is an Index used to calculate Your actual Interest Rate. If this Index ceases to exist, We may adopt a new Index which will then be used to figure Your actual Interest Rate.

13. **ORAL AGREEMENTS. Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect You (borrower(s)) and Us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between Us, except as We may later agree in writing to modify it.**

Borrower's Initials: vm  DS

**ADDITIONAL PROVISIONS OF LOAN AGREEMENT**

Further paragraphs of this Agreement are set forth on the preceding pages, and You agree to be bound by all of the provisions of this Agreement including those set forth in the "Important Insurance Requirements" portion of this Agreement.

**Signatures:** You have signed this Agreement on _____1/4/2018_____ and acknowledge that You have read it, that You understand it, and that You have received a completely filled-in copy of it.

DocuSigned by:

X _/s/ Virginia Mills_____    X _____
Signature of Borrower                                                        Signature of Borrower ☐ Owner of Collateral (other than Borrower)
101AE A894E77419...

X _____    X _____
Signature of Borrower ☐ Owner of Collateral (other than Borrower)    Witness


**Co-Signer:** You understand that You are fully liable to pay any amounts due under this Agreement. The Credit Union does not have to make any demand on any other person obligated under this Agreement, nor take any steps to repossess any collateral before demanding that You pay any amount. You have read this entire Agreement, You understand it, and You agree to be bound by all of the terms.

_____    X _____    _____
Name of Co-Signer (Please Print)            Signature of Co-Signer                                                Date

_____
Street Address                      City                    County              State        Zip

**Itemization Of Amount Financed**

1001 Lynch Street • St. Louis, MO 63118
(314) 771-7700 • (800) 325-9905

| Name of Borrower | Name of Borrower |
|---|---|
| Virginia Miller | |

As used below, the words "You" and "Your" refer to anyone who signs this statement.
Anheuser-Busch Employees' Credit Union and it's division makes the following disclosure as part of the Truth-in-Lending Disclosure State

Itemization of AMOUNT FINANCED of    $21,641.28

1. Amount given to You                                                                $0.00
2. Amount credited to Your account
3. Amount paid to others on Your behalf: (see details below)          $21,641.28

1. Details of amount paid to others on Your behalf (item 3 above):

   Charges paid to others:

   To  GAP                                                       $375.00
       (name of payee)

   To  _____
       (name of payee)

   To  Central Bank                                              $21,266.28
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

   To  _____
       (name of payee)

The undersigned acknowledges receipt of a copy of this statement.

DocuSigned by:
Virginia Miller                          Jan-04-2018 | 07:12 AM CST
101AEA894E77419...

| Borrower's Signature | Date | Borrower's Signature | Date |
|---|---|---|---|

| Borrower's Signature | Date | Borrower's Signature | Date |
|---|---|---|---|

Copyright Oak Tree Business Systems, Inc., 2011-2012. All Rights Reserved.                                    OTBS 076 ANHE (11/12)

THIS IS NOT A

| BORROWER 1 NAME | BORROWER 2 NAME |
|---|---|
| Virginia Miller | |

**MEMBER'S CHOICE™ BORROWER SECURITY CONTRACT ("Contract")**

**PROTECTED LOAN(S)**

LOAN NUMBER

### OPTIONS

| YOU ELECT THE FOLLOWING OPTION: (check only one box) | ☐ Life Disability & Unemployment<br>- Loss of Life<br>- Disability<br>- Involuntary Unemployment | ☐ Life Disability<br>- Loss of Life<br>- Disability | ☐ Life<br>- Loss of Life | ☑ No Protection |
|---|---|---|---|---|
| Program Fee: Cost per $100 of the Monthly Outstanding Loan Balance* | $0.451 | $0.273 | $0.078 | |
| Estimated Total Fees for Option chosen (Closed-End Only) | $0.00 | | | |

This Contract protects the first two Borrowers listed on the lending agreement.
The protected Borrower(s) may not qualify for all benefits.

**NOTICES:**
*If the Outstanding Balance is greater than $100,000, the rate will not be applied to the amount that exceeds $100,000.

The Contract contains certain terms, conditions and exclusions. Subject to those terms, conditions and exclusions, You are eligible for protection under this Contract if You are a Borrower on the Loan on the Effective Date of Protection and meet the eligibility requirements below.

**ELIGIBILITY QUESTIONS:**
If electing Disability or Involuntary Unemployment, You must answer Question 1.
1. Are You working twenty-five (25) hours or more per week?
   Borrower 1          Borrower 2
   ☐ Yes   ☐ No       ☐ Yes   ☐ No
If at least one Borrower answered "Yes" to Question 1, both Borrowers are eligible for Disability or Involuntary Unemployment.

Please read this Contract in its entirety. You are bound by the terms and conditions. **This Contract is voluntary and not required to obtain credit. We will not consider whether or not You elect protection in making a credit decision.** We reserve the right to refuse Your purchase of the protection. This Contract explains the terms that both the Borrower(s), herein referred to as "You" or "Your" and the Creditor, herein referred to as "We", "Us", or "Our", agree to follow. This Contract contains the conditions upon which We will cancel all or a portion of the Protected Balance and/or cancel the Daily Payment and/or interest only and the Program Fee. This Contract replaces all credit insurance policies and/or certificates, similar payment protection plans, and program contracts You previously entered into with respect to the Loan.

☐ **Subsequent Election**
If the election above represents a replacement of credit insurance, similar payment protection or a change in the program for an existing Loan, and the cost of the newly elected protection results in increased Program Fees, You agree to:
☐ make additional Loan payments of the same amount until what You owe has been repaid.
☐ increase Your Loan payment to $_____ per _____.
☐ make _____ additional Loan payments **and** increase Your Loan payment to $_____ per _____.
☐ increase Your monthly payment according to the terms of Your Loan.
☐ increase the monthly Program Fee withdrawn from Your account.

**Your signature or authentication below means:** (a) that You meet the eligibility requirements shown above; (b) that Your election above will remain in effect, according to the terms of the Contract, unless subsequently modified; (c) that You agree that You have received and thoroughly read the Contract; (d) that You agree to pay for and, where applicable, let Us add the Program Fee to Your Loan balance each month, which would subject the Program Fee to finance charges like the rest of Your Outstanding Balance; (e) that the fee You are charged for this protection is subject to change; and (f) if the "No Protection" checkbox is marked or if no checkbox is marked in the Options section, You do not have protection.

| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE | DATE |
|---|---|---|---|
| X *Virginia Miller* | Jan-04-2018 \| 07:12 AM | X | ST |
| 101AEA094E77419... | | | |

© CUNA Mutual Group 2013 All Rights Reserved

CONTRACT

DEFINITIONS

**ACCIDENTAL INJURY** means bodily harm that is unforeseen, unexpected, involuntary and due to an external cause.
**ACTIVE EMPLOYMENT OR ACTIVELY EMPLOYED** means that You are employed for income twenty-five (25) hours or more per week.
**ACTIVELY WORKING** means You are at work and actually performing a job.
**ADMINISTRATOR** means CUNA Mutual Insurance Agency, Inc., 5910 Mineral Point Road, Madison, Wisconsin 53705, one of its affiliates or a contracted third party.
**ADVANCE** means each extension of credit We provide to You under a Loan.
**BORROWER** means a person who is obligated to repay the Advance to Us, either solely, principally or jointly and severally. A Borrower does not include guarantors.
**DAILY PAYMENT** means one-thirtieth (1/30th) of the monthly Protected Payment.
**EFFECTIVE DATE OF PROTECTION** means the later of: (1) the date You purchased protection under this program option; (2) the date We reinstate Your protection under this Contract if applicable; or (3) the date of an Advance under a protected Loan.
**LOAN** means a closed-end note or an open-end credit plan as set forth in the protected Loans section on this Contract.
**NON-PROTECTED ADVANCE** means any Advance not protected according to the Non-Protected Events section of this Contract.
**OUTSTANDING BALANCE** means the outstanding Loan balance under a protected Loan.
**PROGRAM FEE** means the amount You pay monthly for protection under the Contract. The amount you pay is applied in arrears. This means the monthly amount You pay is for the previous month of protection. The rate used to determine the Program Fee is subject to change. You will receive notice before any increase goes into effect.
**PROTECTED BALANCE** means the principal, interest, the Program Fee and any amounts which the Creditor and the Borrower agreed to finance as part of the Loan. It does not include any other fees, any Non-Protected Advances, the amount of any payment that represents past due payments or amounts that exceed any credit limit for the Loan. A scheduled lump-sum balloon payment will be protected for the amount of the minimum payment due for the period immediately preceding the scheduled balloon payment. For interest cancellation options, the Protected Payment will be the interest and Program Fee due on the Protected Balance. For variable rate and/or variable payment Loans, the Protected Payment will remain equal to the protected Payment as of the first day of the protected event. Additionally, any Advance taken during any period of Disability or Involuntary Unemployment will not be protected and the payment for that Advance will not be cancelled. You are responsible for re-paying any amounts that are not cancelled.
**PROTECTED PAYMENT** means the minimum payment amount, including principal, interest, and the Program Fee, due on the Protected Balance.
**PROTECTION ACTIVATION** means the cancellation of Your Daily Payment in accordance with the terms and provisions of the Contract.
**SICKNESS** means a disease, illness or condition that affects the body and causes bodily malfunction or discomfort.
**TEMPORARY EMPLOYEE** means an employee of a single employer working in a limited-term employment assignment or an employee working in a contingent or temporary employment assignment with a different entity than the employee's employer and is not paid by the entity where such employee actually performs work.

PROTECTED EVENTS

We will protect the Loan(s) according to the terms of this Contract if You purchased protection and You have paid the applicable Program Fee. Throughout the life of the Loan, You must qualify for protection at the time of Protection Activation. It is Your responsibility to notify Us if Your circumstances change.

**LOSS OF LIFE (Included with Life Disability & Unemployment, Life Disability, and Life)**
If Your death occurs:
- before the end of the month during which You reach Your 70th birthday, We will cancel 100% of Your Protected Balance as of the date of death, up to a maximum of $100,000.
- after the end of the month during which You reach Your 70th birthday, We will cancel 25% of Your Protected Balance as of the date of death, up to a maximum of $25,000.

If two protected Borrowers die, We will cancel the lesser of the Loss of Life amount for each protected Borrower or the Protected Balance.

**DISABILITY (Included with Life Disability & Unemployment and Life Disability)**
Disability means You are unable, because of a medically determined Accidental Injury or Sickness, to perform all of the essential functions of Your occupation at the time Your Disability starts, and You are under the regular care and treatment of a licensed physician. If You are not employed when Your Disability starts, Disability always means You are unable, because of a medically determined Accidental Injury or Sickness, to perform the essential functions required of any occupation for which You are reasonably qualified by training, education or experience.
**To qualify for Disability protection, You must:** (1) meet the definition of Disability for at least fourteen (14) consecutive days; and (2) not be Actively Working at any job or combination of jobs paying You an income equal to or exceeding 80% of the income You were earning from Your Active Employment immediately preceding the date You qualified for Disability.
For each period of Disability, We will cancel the Daily Payment for each day that You are disabled beginning with the first (1st) day of Disability and continuing for up to twelve (12) months.
**Cancellation of Your Protected Payment will stop the earliest of:** (1) twelve (12) months of Daily Payments have been cancelled; (2) $12,000 maximum per period of Disability has been reached; (3) You no longer have a Protected Balance, Your Loan is paid-off or discharged for any reason; (4) the date You return to Actively Working at any job or combination of jobs paying You an income equal to or exceeding 80% of the income You were earning from Your Active Employment immediately preceding the date You qualified for Disability; (5) You no longer qualify for Disability protection; or (6) You are deceased.

**INVOLUNTARY UNEMPLOYMENT (Included with Life Disability & Unemployment)**
Involuntary Unemployment means that You involuntarily lost Your Active Employment.
**To qualify for Involuntary Unemployment protection, You must meet the following requirements at the time of Protection Activation and throughout the protected period:** (1) You meet the definition of Involuntary Unemployment for at least fourteen (14) consecutive days; (2) You are receiving or have received state unemployment benefits for the period of unemployment for which You are requesting Protection Activation; (3) You are seeking Active Employment; and (4) You provide Us or Our Administrator with proof of qualification for Involuntary Unemployment protection at the time of Protection Activation and throughout the protected period.
**NOTE: An award for unemployment benefits from Your state agency does not guarantee cancellation of Your Protected Payment under this Contract.**
We will cancel the Daily Payment for each day that You qualify for Involuntary Unemployment, beginning with the later of the first (1st) day of Involuntary Unemployment or the first day after any severance pay has ceased and continuing until the earliest of: (1) We have cancelled six (6) months of payment per period of Involuntary Unemployment; (2) We have cancelled $6,000 of payment per period of Involuntary Unemployment; or (3) Your entire Protected Balance has been cancelled.
**Protection Activation will not be provided for Involuntary Unemployment resulting from:** (1) any annual, regularly scheduled or seasonal layoff; (2) any period of unemployment that occurs while You are a Temporary Employee, independent contractor, self-employed or employed by a joint Borrower; (3) retirement; (4) vacation; (5) strike; (6) unionized labor dispute; (7) lockout; (8) sabbatical; (9) Family Leave; (10) Disability; (11) termination due to Your willful or criminal misconduct; (12) resignation by agreement with Your employer; (13) voluntary furlough; (14) voluntary unemployment; (15) voluntary loss of wages; or (16) spousal relocation.

## NON-PROTECTED EVENTS

An otherwise Protected Event will not be protected under this Contract if it:
- is due to the commission of a felony;
- is caused by or results from an atomic explosion or any other release of nuclear energy (except when used solely for medical treatment);
- is the result of cosmetic surgery;
- is the result of an assisted suicide or an attempted assisted suicide; or
- occurs prior to the Effective Date of Protection.

An otherwise protected event will not be protected by **Loss of Life** protection if it:
- occurs within the six (6) months immediately following the Effective Date of Protection for the Advance, and is related to a pre-existing condition for which You received advice, diagnosis, or treatment (including medication) within the six (6) months immediately preceding the Effective Date of Protection for the Advance; or
- is the result of a suicide or an intentionally self-inflicted injury that occurs within the twelve (12) months immediately following the Effective Date of Protection for the Advance.

An otherwise protected event will not be protected by **Disability** protection if it:
- occurs within the six (6) months immediately following the Effective Date of Protection for the Advance, and is related to a pre-existing condition for which You received advice, diagnosis, or treatment (including medication) within the six (6) months immediately preceding the Effective Date of Protection for the Advance;
- is related to a normal pregnancy; or
- is due to an intentionally self-inflicted injury.

An otherwise protected event will not be protected by **Involuntary Unemployment** protection if it:
- occurs within the six (6) months immediately following the Effective Date of Protection for the Advance; or
- is due to an intentionally self-inflicted injury.

## GENERAL PROVISIONS

**CHANGING YOUR OPTIONS.** You must provide Us written notice of any request to change Your options. If You add a protected event, the effective date for the additional protected event is the date You purchased protection for that protected event. (This will not change the effective date for any previously elected protected event(s).) If You remove a protected event, the termination date is the date You removed protection for that protected event, which can never precede the date of Your written notice.

**CHANGING THE TERMS OF THIS CONTRACT.** We reserve the right to change the terms of this Contract and apply those changes to the protection You purchased under this Contract. You will receive notice before any change goes into effect. Your continued payment of the Program Fee will constitute Your acceptance of the change in terms.

**CONCURRENT PROTECTED EVENTS.** For each protected Borrower, the amount cancelled will be applied to the dollar and term limitations for each protected event. We will never cancel more than the Daily Payment for any one day. If You qualify for Disability (original protected event) and sustain an additional Sickness or Accidental Injury, which would be in and of itself disabling, the additional Sickness or Accidental Injury will not be considered a new Disability protected event, but rather will be considered the same protected event. This means that You will receive benefits only if You did not exhaust Your maximum protected event benefits in connection with the original protected event.

**CONTINUED EFFECTIVENESS.** If any part of this Contract is determined to be unenforceable, it does not affect the validity of the rest of the Contract.

**ERRORS AND ADJUSTMENTS.** If We have inadvertently deviated from the terms of this Contract, We will make the necessary adjustments when the error is discovered. If We cancel more benefits than You are entitled to under this Contract, You will remain obligated to pay these amounts to Us within thirty (30) days of receipt of written notification from Us as if no cancellation occurred.

**LOAN OBLIGATION.** Protection under this Contract does not affect, alter, or otherwise relieve Your obligations under Your Loan with Us. Whether or not You have made a request for Protection Activation, You remain obligated to make payments to Us and to comply with the terms of Your Loan.

**LOAN OBLIGATION AFTER A PROTECTED EVENT.** During the time it takes to process Your Protection Activation, You remain responsible for making at least the minimum required Loan payment due on the Loan by the payment due date. If the required minimum Loan payment due is greater than the Protected Payment, You are responsible for paying the difference to Us. Upon approval of Your Protection Activation, We will refund to You or credit to Your account any Loan payments You made during the processing period that were eligible for cancellation.

**MISSTATEMENT OF MATERIAL FACT.** If We find that You provided false or inaccurate information We reserve the right to terminate Your protection. If a Protection Activation has been filed, the Protection Activation will be denied.

**PAST EVENTS.** This Contract does not protect You from events that occurred before You purchased protection.

**PROOF OF A PROTECTED EVENT.** You must notify Us or Our Administrator of a protected event as soon as possible. You are responsible for providing, and continuing to provide, all the information required by Us to determine qualification for Protection Activation for the protected event. If You fail to provide all the information required by Us to verify Your continued qualification for Protection Activation We will not cancel all or a portion of the interest, Daily Payment, Program Fee, or Protected Balance. All information must verify the protected event to Our satisfaction. We will only make cancellations if You have a Protected Balance at the time of the protected event.

**RECURRENCE OF SAME OR RELATED PROTECTED EVENTS.** If the same type of protected event occurs again within one (1) year after You have recovered or returned to Active Employment, We will treat this as one protected event subject to the initial protected event's terms and conditions, including, but not limited to the maximum number of cancellations for the initial protected event. No additional benefits will be activated once You have reached any of the initial protected event's maximums. For Disability, this only applies if You suffer a Disability due to the same condition.

If the same type of protected event (for Disability the same condition) occurs again more than one (1) year after You have recovered or returned to Active Employment, We will consider it a new protected event and You will need to satisfy all requirements to qualify for Protection Activation. This provision applies whether You return to Active Employment with the same or a different employer.

**REFINANCING.** If Your Loan is paid off, refinanced, or is discharged for any reason, Protection Activation will cease, regardless of the number of cancellations You may otherwise be entitled to. However, if You refinance the Loan with Us, We will treat the refinanced Loan as a continuation of the previously protected Loan. Your Protection Activation will continue without having to re-qualify for eligibility.

**TAX IMPLICATIONS.** You may be subject to federal, state, and local taxes on the amount of Your cancelled Protected Payment or Protected Balance. You should consult Your tax advisor. We or Our Administrator will not provide You with guidance on the tax implications, if any, of a cancelled debt.

**TERMINATION OF PROTECTION.** You may terminate protection on Your account(s) at any time by providing Us with written notice at least five (5) business days prior to the requested termination date. If You do so within thirty (30) days of purchasing protection, We will credit You for any Program Fees charged for the protected account(s). We will credit You for any Program Fees You paid for the period after Your protection terminates. Termination will not affect benefits for a protected event that occurred prior to the termination date as long as an Outstanding Balance remains on the protected account(s).

CONTRACT

**Your protection will automatically terminate:**
- on the last day of the month during which Your Loan and/or Program Fee is three (3) months delinquent or past due. If You bring Your protected account current, Your protection will be reinstated automatically on the date You make enough of a Loan payment so that no portion of Your protected account is past due three (3) months or more; or
- if We give You written notice at least thirty (30) days in advance of the termination (or as required by law).

Contact Us with any questions on this Contract.



423 Lynch Street
St. Louis, MO 63118
877-325-2848
www.togethercu.org

# Loan and Security Agreements and Disclosure Statement

☐ Covered Borrower Under Military Lending Act
☒ FIXED RATE   ☐ STEP RATE   LOAN DATE             MATURITY DATE
☐ VARIABLE RATE              03/13/2020            03/27/2026

| BORROWER 1 (Name & Address) | BORROWER 2 (Name & Address) |
|---|---|
| Virginia Jack<br>1718 S 9th St Apt 2D<br>Saint Louis, MO 63104-3995 | |

| BORROWER 3 (Name & Address) | BORROWER 4 (Name & Address) |
|---|---|
| | |

## TRUTH IN LENDING DISCLOSURE ('e' means an estimate)

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit is $ 24,422.86<br>which includes Your downpayment of |
|---|---|---|---|---|
| 13.24 % | $ 7,722.86 | $ 16,700.00 | $ 24,422.86 | $ 0.00 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 71 | $ 339.21 | Monthly | beginning 04/27/2020 |
| 1 | $ 338.95 | | 03/27/2026 |

**Prepayment:** If You pay off early You will not have to pay a penalty.
**Required Deposit:** The Annual Percentage Rate does not take into account Your required deposit, if any.
**Demand:** ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone You want that is acceptable to the Credit Union.

Filing Fees        Non-Filing Insurance
$ 0.00             $

**Late Charge:**
For payment due in excess of $25.00, if Your payment is more than 15 days late, You will be charged the greater of 5.00% of the payment due or $15.00, subject to a maximum in any event of $50.00. For payments due that are $25.00 or less, you will be charged $5.00 if Your payment is more than 15 days late.

**Security:** Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $            in Account No.              $              in Account No.

**Variable Rate:**
The Annual Percentage Rate (APR) will change during the term of this transaction if the Certificate of Deposit Share Rate (Index) changes. We will add a margin of 2.00% to the Index value. The Index value is determined on renewal of the Certificate securing this loan and will change on the first day of the following month after Certificate renewal. Any APR increase will result in more payments. If Your loan were for $10,000.00 at 9.00% for 60 months, and the rate increases to 12.00% after time period, You will have to make 3.65 additional payments.

See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

| Credit Union Together Credit Union | | Acct No.0000642821 | |
|---|---|---|---|

### ITEMIZATION OF THE AMOUNT FINANCED ('e' means an estimate)

| Itemization of Amount Financed of $ 16,700.00 | Amount Given to You Directly $ 7,039.17 | Amount Paid on Your Account $ 0.00 | Prepaid Finance Charge $ 0.00 |
|---|---|---|---|

**Amounts Paid to Others on Your Behalf:** (If an amount is marked with an asterisk (*) We will be retaining a portion of the amount.)

| $ | 5,100.64 | To CardMember Services | $ | 4,255.00 | To BARCLAYS BANK DELAWARE |
|---|---|---|---|---|---|
| $ | 305.19 | To Together CU | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |
| $ | | To | $ | | To |

### MILITARY LENDING ACT DISCLOSURES

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

Please call us at 800-325-2848 to receive oral disclosures of the Military Lending Act disclosure above and a description of the payment obligation.

A "Covered Borrower" for purposes of this loan means a consumer who, at the time the consumer becomes obligated on this loan, is a covered member or a dependent of a covered member as defined by the Military Lending Act. A Covered Borrower does not mean a consumer who (though a Covered Borrower at the time he or she became obligated on this transaction) no longer is a covered member or a dependent of a covered member as defined by the Military Lending Act.

### LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "You" or "Your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $16,700.00    to the Credit Union plus interest on the unpaid balance until what You owe has been repaid.

For **fixed rate** loans, the interest rate is    13.24% per year.

For **step-rate** loans, the initial interest rate will be         % until         and then the interest rate will be         % until the balance is repaid in full.

For **variable rate** loans, the initial interest rate is         % per year and will vary as follows:

The Annual Percentage Rate (APR) will change during the term of this transaction if the Certificate of Deposit Share Rate (Index) changes. We will add a margin of 2.00% to the Index value. The Index value is determined on renewal of the Certificate securing this loan and will change on the first day of the following month after Certificate renewal. Any APR increase will result in more payments. If Your loan were for $10,000.00 at 9.00% for 60 months, and the rate increases to 12.00% after time period, You will have to make 3.65 additional payments.

**Collection Costs:**

You agree to pay all costs of collecting the amount You owe under this Agreement, including court costs and reasonable attorney fees.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells You whether, if the interest rate increases, You will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If You prepay any part of what You owe, You are still required to make the regularly scheduled payments, unless We have agreed to a change in the payment schedule. Because this is a simple interest loan, if You do not make payments exactly as scheduled, Your final payment may be more or less than the amount of the final payment that is disclosed. If You elect voluntary payment protection, We will either include the premium or program fee(s) in Your payments or extend the term of Your loan. If the term is extended, You will be required to make additional payments of the scheduled amount, until what You owe has been paid. You promise to make all payments to the place We choose. If this loan refinances another loan You have with Us, the other loan will

be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner We choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to You, interest on this loan begins on the date the loan proceeds are mailed to You.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans You have with Us also secures this loan, unless the property is a dwelling or otherwise prohibited by federal and/or state law. In addition to Your pledge of shares, We may also have what is known as a statutory lien on all individual and joint accounts You have with Us. A statutory lien means We have the right under federal and/or state law to claim an interest in Your accounts. Unless otherwise prohibited by federal and/or state law, We can enforce a statutory lien against Your shares and dividends and, if any, interest and deposits, in all individual and joint accounts You have with Us to satisfy any outstanding financial obligation that is due and payable to Us. We may exercise Our right to enforce this lien without further notice to You, to the extent permitted by law. *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts You have with the Credit Union now and in the future. **The statutory lien and/or Your pledge will allow Us to apply the funds in Your account(s) to what You owe when You are in default.** If a dollar amount and account number are listed in the "Security" section of the Truth in Lending Disclosure, You may not withdraw the amount that has been specifically pledged to secure this loan until the Credit Union agrees to release all or part of the pledged amount. The statutory lien and Your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - *The following paragraph applies to borrowers in Colorado, D.C., Massachusetts, Missouri, Nebraska and West Virginia:* You will be in default under this Agreement if You do not make a payment of the amount required on or before the date it is due. You will be in default if You break any promise You made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if You die, file for bankruptcy, become insolvent (that is, unable to pay Your bills and loans as they become due), or if You made any false or misleading statements in Your loan application. You will also be in default if something happens that We believe may seriously affect Your ability to repay what You owe under this Agreement or if You are in default under any other loan agreement You have with Us.

*The following paragraph applies to borrowers in Kansas and Maine and to South Carolina borrowers of state chartered credit unions in South Carolina:* You will be in default if You do not make a payment of the amount required when it is due. You will also be in default if We believe Your ability to pay or perform Your obligations under this Agreement is significantly impaired. And, You will be in default if the value of any property given as security for this Agreement is significantly reduced.

**6. ACTIONS AFTER DEFAULT** - When You are in default and after expiration of any right You have under applicable state law to cure Your default, We can require immediate payment of the entire unpaid balance under this Agreement and enforce any security interest You have given Us. If We demand immediate payment, You will continue to pay interest at the rate provided for in this Agreement, until what You owe has been repaid. **We will also apply against what You owe any shares and/or deposits given as security under this Agreement.** We may also exercise any other rights given by law when You are in default.

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means We can enforce Our rights against any one of You individually or against all of You together.

**8. LATE CHARGE** - If You are late in making a payment, You promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, You will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to You at the most recent address You have given Us in writing. Notice to any one of You will be notice to all.

**12. USE OF ACCOUNT** - You promise to use Your account for consumer (personal, family or household) purposes, unless the Credit Union gives You written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. OTHER PROVISIONS** -

None at this time.

| Credit Union | Together Credit Union |
|---|---|

## SECURITY AGREEMENT

In this Security Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "You" or "Your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give Us what is known as a security interest in the Property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest You give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which You buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money You receive from selling the Property or from insurance You have on the Property. If the value of the Property declines, You promise to give Us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **Unless prohibited by applicable law, the security interest also secures any other loans, including any credit card loan, You have now or receive in the future from Us and any other amounts You owe Us for any reason now or in the future, except any loan secured by Your principal dwelling.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or Your principal dwelling, the Property will secure only this Loan and not other loans or amounts You owe Us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that You own the Property or, if this Loan is to buy the Property, You promise You will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that You have not already told Us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise You will allow no other security interest or lien to attach to the Property either by Your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If Your state issues a title for the Property, You promise to have Our security interest shown on the title. We may have to file what is called a financing statement to protect Our security interest from the claims of others. You irrevocably authorize Us to execute (on Your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to Us. You promise to do whatever else We think is necessary to protect Our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, We incur in protecting Our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, You promise You will: (1) Use the Property carefully and keep it in good repair. (2) Obtain Our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform Us in writing before changing Your address. (4) Allow Us to inspect the Property. (5) Promptly notify Us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle the Property in another state without telling Us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to Us. You may provide the property insurance through a policy You already have, or through a policy You get and pay for. You promise to make the insurance policy payable to Us and to deliver the policy or proof of coverage to Us if asked to do so.

If You cancel Your insurance and get a refund, We have a right to the refund. If the Property is lost or damaged, We can use the insurance settlement to repair the Property or apply it towards what You owe. You authorize Us to endorse any draft or check which may be payable to You in order for Us to collect any refund or benefits due under Your insurance policy.

If You do not pay the taxes or fees on the Property when due or keep it insured, We may pay these obligations, but We are not required to do so. Any money We spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and You will pay interest on those amounts at the same rate You agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor Our loans for the purpose of determining whether You and other borrowers have complied with the insurance requirements of Our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to Us and (2) the cost of determining compliance with the insurance requirements. If We add amounts for taxes, fees or insurance to the unpaid balance of the Loan, We may increase Your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If You do not purchase the required property insurance, the insurance We may purchase and charge You for will cover only Our interest in the Property. The premium for this insurance may be higher because the insurance company may have given Us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws**.

**8. DEFAULT** - You will be in default if You break any promise You make or fail to perform any obligation You have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any Property You have given Us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the Property or Our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When You are in default and after You have been given any time You have under state law to cure Your default, We may require immediate payment of the outstanding balance of the Loan without giving You advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the

Credit Union Together Credit Union

Property without judicial process if this can be done without breach of the peace. We may take possession of the Property at a time and place We choose. If the Property is a motor vehicle or boat, You agree that We may obtain a key or other device necessary to unlock and operate it, when You are in default. We will not be responsible for any other property not covered by this Agreement that You leave inside the Property or that is attached to the Property. We will try to return that property to You or make it available for You to claim.

After We have possession of the Property, We can sell it and apply the money to any amounts You owe Us. We will give You notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If You have agreed to pay the Loan, You must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what You owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan, until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives. If We change the terms of the Loan, You agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. OTHER PROVISIONS** -

None at this time.

### SIGNATURES

By signing, or otherwise authenticating, as Borrower, You agree to the terms of the Loan Agreement. If Property is described in the "Security" section of the Truth in Lending Disclosure, You also agree to the terms of the Security Agreement. If You sign, or otherwise authenticate, as "Owner of Property" You agree only to the terms of the Security Agreement. **NOTICE TO CONSUMER: 1. Do not sign this Agreement before You read it. 2. You are entitled to a copy of this Agreement. 3. You may prepay the unpaid balance at any time without penalty.**

| Borrower 1 Signature  DocuSigned by: [signature] D62BC23C380448D... | Date Mar-15-2020 \| 02:30 AM CDT (Seal) | Borrower 2 Signature X | Date (Seal) |

Virginia Jack

| Signature X | Date (Seal) | Signature X | Date (Seal) |

☐ Borrower 3:
☐ Owner of Property

☐ Borrower 4:
☐ Owner of Property

Credit Union Together Credit Union

| BORROWER 1 (Name & Address) | BORROWER 2 (Name & Address) |
|---|---|
| Virginia Jack<br>1718 S 9th St Apt 2D<br>Saint Louis, MO 63104-3995 | |

| BORROWER 3 (Name & Address) | BORROWER 4 (Name & Address) |
|---|---|
| | |

OWNER OF PROPERTY NAME AND ADDRESS

| Collateral | Property/Model/Make | Year | I.D. Number | Lien Amount | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | $ | $ | |
| | | | | $ | $ | |
| | | | | $ | $ | |

Other (Describe)
Pledge of Shares  $            in Account No.            $            in Account No.

## SECURITY AGREEMENT

In this Security Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "You" or "Your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give Us what is known as a security interest in the Property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest You give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which You buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money You receive from selling the Property or from insurance You have on the Property. If the value of the Property declines, You promise to give Us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **Unless prohibited by applicable law, the security interest also secures any other loans, including any credit card loan, You have now or receive in the future from Us and any other amounts You owe Us for any reason now or in the future, except any loan secured by Your principal dwelling.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or Your principal dwelling, the Property will secure only this Loan and not other loans or amounts You owe Us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that You own the Property or, if this Loan is to buy the Property, You promise You will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that You have not already told Us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise You will allow no other security interest or lien to attach to the Property either by Your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If Your state issues a title for the Property, You promise to have Our security interest shown on the title. We may have to file what is called a financing statement to protect Our security interest from the claims of others. You irrevocably authorize Us to execute (on Your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to Us. You promise to do whatever else We think is necessary to protect Our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, We incur in protecting Our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, You promise You will: (1) Use the Property carefully and keep it in good repair. (2) Obtain Our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform Us in writing before changing Your address. (4) Allow Us to inspect the Property. (5) Promptly notify Us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle the Property in another state without telling Us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to Us. You may provide the property insurance through a policy You already have, or through a policy You get and pay for. You promise to make the insurance policy payable to Us and to deliver the policy or proof of coverage to Us if asked to do so.

If You cancel Your insurance and get a refund, We have a right to the refund. If the Property is lost or damaged, We can use the insurance settlement to repair the Property or apply it towards what You owe. You authorize Us to endorse any draft or check which may be payable to You in order for Us to collect any refund or benefits due under Your insurance policy.

If You do not pay the taxes or fees on the Property when due or keep it insured, We may pay these obligations, but We are not required to do so. Any money We spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and You will pay interest on those amounts at the same rate You agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor Our loans for the purpose of determining whether You and other borrowers have complied with the insurance requirements of Our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to Us and (2) the cost of determining compliance with the insurance requirements. If We add amounts for taxes, fees or insurance to the unpaid balance of the Loan, We may increase Your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If You do not purchase the required property insurance, the insurance We may purchase and charge You for will cover only Our interest in the Property. The premium for this insurance may be higher because the insurance

company may have given Us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws**.

**8. DEFAULT** - You will be in default if You break any promise You make or fail to perform any obligation You have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any Property You have given Us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the Property or Our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When You are in default and after You have been given any time You have under state law to cure Your default, We may require immediate payment of the outstanding balance of the Loan without giving You advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If We ask, You promise to deliver the Property at a time and place We choose. If the Property is a motor vehicle or boat, You agree that We may obtain a key or other device necessary to unlock and operate it, when You are in default. We will not be responsible for any other property not covered by this Agreement that You leave inside the Property or that is attached to the Property. We will try to return that property to You or make it available for You to claim.

After We have possession of the Property, We can sell it and apply the money to any amounts You owe Us. We will give You notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If You have agreed to pay the Loan, You must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what You owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan, until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives. If We change the terms of the Loan, You agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. OTHER PROVISIONS** -
None at this time.

### SIGNATURES

By signing, or otherwise authenticating, You agree to the terms of this Security Agreement.

| Owner of Property | Date |
|---|---|
| X [signature] | Mar-15-2020 \| 02:30 AM CDT (Seal) |
| DocuSigned by: D62BC23C380448D | |

| Owner of Property | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X | (Seal) |

☐ Owner of Property        ☐ Owner of Property